MICHAEL L. CROWLEY (117008)
Attorney at Law
550 West "C" Street, Suite 1960
San Diego, CA 92101
(619) 444-8808

Attorney for Defendant

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
(Honorable Roger T. Benitez)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ESMERELDA PICAZO (1), et al.,<br><br>　　　　Defendant. | Case Nos.: 08mj1391/08CR1555-BEN<br><br>POINTS AND AUTHORITIES<br>IN SUPPORT OF MOTIONS FOR<br>1. DISCOVERY<br>2. CONFIDENTIAL INFORMANT<br>　　DISCLOSURE, IF ANY<br>3. ATTORNEY VOIR DIRE<br>4 PRESERVATION OF EVIDENCE<br>5. REVIEW OF ALL PERSONNEL<br>　　FILES<br>6. NOTICE OF INTENT TO USE<br>　　EVIDENCE<br>7. FOR SEVERANCE OF<br>　　DEFENDANTS<br>8. FOR SUPPRESSION OF EVIDENCE<br>9. SUPPRESSION OF STATEMENT<br>10. FURTHER MOTIONS<br><br>DATE: June 30, 2008<br>TIME: 2:00 p.m.<br>PLACE: Courtroom of the Honorable<br>　　　　Roger T. Benitez |

**FACTUAL STATEMENT**

The following factual statement is based on information contained in the complaint, indictment and discovery, if any, received to date. Other than indicated, defendant does not accept or adopt any part of the statement which may be subject to contradiction, enlargement or retraction through evidentiary findings at hearings and trial.

A Boarder Patrol Agent at 8:15 p.m. observed a Lincoln Navigator enter and exit

Interstate 8 and Highway 79 near the Pine Valley and the Corte Madera Road Bridge. The Navigator pulled in behind a gray Dodge pickup truck to the side of the Interstate. The pickup truck was registered to the last name of Picazo. The agent observed a male exit the Navigator and enter the pickup truck. The Navigator and pickup truck then traveled together for a distance before the pickup exited at Willows Road.

Apparently, sometime later, the agent again observed the Navigator and pickup truck on the westbound lanes of Interstate 8, near the east end of the Pine Valley Creek Bridge with the hazard lights on. Another agent activated his emergency lights and sirens when the pickup truck exited Willows Road and chased the vehicle until the pick-up apparently struck a curb and stopped. There was short foot chase and six individuals were apprehended along with co-defendant ALBERTO LOPEZ-MARTINEZ and all admitted being Mexican citizens with no right to be in the United States.

Later, another agent stopped the Lincoln Navigator near the Tavern Road Exit in Alpine, California and arrested the driver co-defendant ESMERELDA PICAZO and MANUEL ZAMORA-FLORES. Ms. PICAZO gave a statement admitting she and her husband were to be paid $1,000 to assist in a smuggling operation.

**DISCOVERY**

The government must disclose the information requested in this motion for discovery under the obligations of Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 , 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Moreover, a defendant's entitlement to due process of law, guaranteed by the Fifth Amendment to the United States Constitution, as well as the Sixth Amendment right to effective assistance counsel, impose additional requirements on the Court and prosecution to ensure the production of fair discovery.

All of the requests are for items within the possession, custody, or control of either state or the federal government. This, of course, includes attorneys for the

government, agents of the Federal Bureau of Investigation, the Drug Enforcement Administration, Immigration and Customs Enforcement, Boarder Patrol and potentially other government agents, officials, employees, or informants participating in the investigation or prosecution of the matters involved in this case whether under state or federal authority. It has been held repeatedly that the government's discovery obligations extend to materials in the possession, custody or control of all its agencies and agents. *See, e.g. United States v. Beasley*, 576 F.2d 625, 632 (5th Cir. 1978); *United States v. Bryant*, 439 F.2d 642, 650 (D.C. Cir. 1971); *United States v. James*, 495 F.2d 434, 436 (5th Cir. 1974); *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973).

This proposition was further reiterated in the United States Supreme Court case of *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L. Ed. 2d 490 (1995) in which the court stated:

> "[T]he prosecution, which alone can know what is undisclosed, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, see *Brady*, 373 U.S. at 87), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is

3

inescapable."

*Id.* 115 S.Ct. at 1567.

## II. THIS COURT SHOULD REVEAL THE IDENTITY OF THE CONFIDENTIAL INFORMANT

If an informant was involved in the investigation, the following motion is relevant. Informant's testimony which may be "relevant and helpful to the defense of an accused" requires the government to disclose the identity. *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957). Under *Roviaro*, there is no fixed rule with respect to disclosure of a confidential informant, although four considerations are relevant: (1) the crime charged; (2) the possible offenses; (3) the possible significance of the informant's testimony; and (4) other relevant factors. *Id.* at 62-64. In a case such as this, the testimony of the informants is vital to the defense.

Even if the informant or informants may not be called to testify for the government, the defense may call him. *See United States v. Montgomery*, 998 F.2d 1468 (9th Cir. 1992); *Lopez-Hernandez v. United States*, 394 F.2d 820 (9th Cir. 1968); *Velarde-Villarreal v. United States*, 354 F.2d 9 (9th Cir. 1965).

## III. ATTORNEY CONDUCTED VOIR DIRE SHOULD BE ALLOWED

Trial by jury lies at the very core of our democratic institutions. The Sixth Amendment to the United States Constitution guarantees the right of an accused to a trial before an "impartial" jury. One of the avenues chosen to ensure the selection of a fair and impartial jury is our system of juror challenges. The right to challenges for cause and peremptory challenges is firmly embedded in our federal system and that of each of the 50 states. *See Swain v. Alabama*, 380 U.S. 202 (1964).

The use of challenges enables us to deal with the fact that all prospective jurors walk into a criminal courtroom with opinions and biases based on a lifetime of experiences and many of these biases unduly influence the individual's judgments in considering a case. Hence, it is important that we preserve our mechanism of

4

ascertaining such biases through the process voir dire and of challenging those prospective jurors who hold biases and opinions which are likely to influence their judgments unfairly.

A right to challenge prospective jurors, however, is worthless unless the challenges have meaning. As stated in *United States v. Ledee*, 549 F.2d 990 (1977):

> Peremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes.
>
> Challenges can only have meaning if the attorneys have information which enables them to discern differences among the prospective jurors.

As stated in *United States v. Harris*, 542 F.2d 1283, 1294 (7th Cir. 1976), *cert. denied*, 430 U.S. 934, 51 L.Ed 2d 777 (1976):

> The defendants must be permitted sufficient inquiry into the backgrounds and attitudes of prospective jurors to enable them to exercise intelligently their peremptory challenges.

Allowing counsel to conduct their own limited voir dire enables these challenges to be exercised more intelligently and guarantees the right of fairer jury selection. *See, Art Press v. Western Printing Machinery Co.*, 791 F.2d 6l6 (7th Cir. 1986).

## IV. PRESERVATION OF EVIDENCE

Pursuant to 18 U.S.C. section 3500, the defendant has a right to government witnesses' statements to use in cross-examination. The rough notes of the agents (both state and federal) should be turned over at this time to avoid delay at the time of trial. Absent a ruling to that effect or a stipulation from the government, defendant requests that all rough notes by all agents (state or federal) be preserved such that timely disclosure can be made.

5

The destructions of such notes, the government should be warned, could lead to sanctions which could include a striking of the testimony of witnesses about whom such notes pertain or dismissal of the indictment. *United States v. Harris*, 542 F.2d 1094 (9th Cir. 1976); *United Stats v. Johnson*, 521 F.2d 1318 (9th Cir. 1975); *United States v. Well*, 572 F.2d 1383 (9th Cir. 1978).

## V. ALL PERSONNEL FILES SHOULD BE REVIEWED BY THE AUSA OR PROPER ASSURANCES OF REVIEW PROVIDED.

The Ninth Circuit has ruled that the request for discovery and the *in camera* procedure is appropriate for the review of personnel files by the court in order to ascertain whether impeachable material is contained in the files. *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991). There is no necessity that the defense make an initial showing of materiality but merely make the demand for the documents.

Should this court find that there is no necessity for the Asst. U.S. Attorney to review the files personally, then there should be assurances that the review was properly conducted and the defense should be allowed input as to what materials should be searched for pursuant to *Henthorn*.

## VI. NOTICE OF INTENT TO USE EVIDENCE

Rule 12(d) of the Federal Rules of Criminal Procedure allows the defense to request and absent good cause requires the court to order a list of the evidence to be used by the government in its case in chief at trial. The purpose of the rule is to avoid needless motions by the defense to suppress evidence that is not going to be used at trial.

The rule places a burden on the government to review its case and let the defendant know what evidence the government is going to use.  In this way, the rule seeks to "eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt." *Jones v. United States*, 362 U.S. 257, 264 (1960).

Defendant respectfully requests this court require the government to produce

6

such a list of its intended evidence.

## VII. SEVERANCE OF DEFENDANTS IN THS CASE IS APPROPRIATE

A Defendant is entitled to a severance from that of co-defendant(s) if able to demonstrate by way of affidavit that exculpatory testimony could be provided at a separate trial. If tried together, the co-defendant may exercise Fifth Amendment rights to remain silent. Upon filing an affidavit to this effect, the Defendant is entitled to severance of the case from that of the co-defendant(s). *United States v. Vigil*, 561 F.2d 1316 (9th Cir. 1977); *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965).

The Defendant here reserves the right to provide the court with an affidavit which satisfies the requirements of *United States v. Vigil* and thus supports the granting of a severance. Even if the co-defendant would not voluntarily testify at defendant's separate trial, there is a constitutional right to call the co-defendant as a witness. If a co-defendant is called as a witness and refuses to answer questions on Fifth Amendment grounds, Defendant could seek to compel the testimony by requesting immunity for the co-defendant. Defendant could seek an order requiring the government to grant use immunity to the co-defendant under 18 U.S.C. section 6003(b)(1). Utilization of this statute is compelled by the Sixth Amendment's guarantee of compulsory process as well as the Fifth Amendment process considerations of fairness. See *United States v. Leonard*, 494 F.2d 955, 985 n.79 (D.C. Cir. 1974) (concurring and dissenting opinion of Bazelon, J.).

If statutory immunity would not be appropriate, the court could judicially confer immunity independent of the prosecutor's statutory power because Defendant would be "prevented from presenting exculpatory evidence which is crucial to his case." *Unites States v. Lord*, 711 F.2d 887 (9th Cir. 1983); *Government of the Virgin Islands v. Alessi*, 528 F.2d 1029 (9th Cir. 1976). If the co-defendant refuses to testify at a joint trial, Defendant's right to compulsory process under the Fourteenth Amendment

entitles him or her to a separate trial. Considerations of judicial economy do not outweigh those of the prejudice to Defendant if she is denied the right to present important exculpatory evidence. *United States v. Seifert*, 648 F.2d 577, 564 (9th Cir. 1980).

Finally, a severance must be ordered where the trial tactics of co-defendant would prejudice another defendant's case. In *De Luna v. Untied States*, 308 F.2d 140 (5th Cir. 1962), one defendant testified and then commented in summation on the failure of his or her co-defendant to take the stand. The Court of Appeals reversed citing the prejudice engendered in this situation. The Ninth Circuit adopted the holding of *De Luna v. United States*, in *United States v. De la Cruz-Bellinger*, 422 F.2d 723 (9th Cir. 1970).

In the present case, it is unclear whether the co-defendant will testify at trial. Nonetheless, the Ninth Circuit has held that *De Luna* applies in situations where the defenses of various co-defendants are antagonistic or where one defendant exercises his or her right not to testify.

**VIII.** **The Government Cannot Show Any Alleged Statement by Ms. PICAZO Complied with the Constitution.**

In the reports, agents claim that Ms. PICAZO was read his *Miranda* rights and that Ms. PICAZO waived those rights. Subsequently, Ms. PICAZO allegedly made incriminating statements.

**A.** **Miranda Warnings Must Precede Custodial Interrogation.**

The Supreme Court has held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The law imposes no substantive duty upon the defendant to make any showing other than that the statement was taken from the defendant while the defendant was in

8

custody and being subjected to custodial interrogation. *Id*. at 476. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Id*. at 477. *See Orozco v. Texas*, 394 U.S. 324, 327 (1969).

In *Stansbury v. California*, 511 U.S. 318 (1994), the Supreme Court clarified its prior decisions by stating that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id*. at 323. The Ninth Circuit has held that a suspect will be found to be in custody if the actions of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably have led him to believe he could not freely leave. *See United States v. Lee*, 699 F.2d 466, 468 (9th Cir. 1982); *United States v. Bekowies*, 432 F.2d 8, 12 (9th Cir. 1970).

In determining whether a person is in custody, among the factors to be weighed are the language used to summon him, the physical surrounding of the interrogation, and the extent to which he is confronted with evidence of his guilt. *United States v. Estrada-Lucas*, 651 F.2d 1261 (9th Cir. 1980).

Once a person is in custody, *Miranda* warnings must be given prior to any interrogation. In a recent decision, *United States v. Leasure*, 122 F.3d 837 (9th Cir. 1997), *cert. denied*, 118 S.Ct. 731 (1998), the Ninth Circuit held that "custody", for purposes of Miranda warnings, could begin at the point of secondary inspection in border cases. *Id*. at 840. Miranda warnings must advise the defendant of each of his or her "critical" rights. *United States v. Bland*, 908 F.2d 471, 474 (9th Cir. 1990). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. *Miranda*, 384 U.S. at 474. *See also Edwards v. Arizona*, 451 U.S. 477 (1981).

B.   **The Government Must Demonstrate That Ms. PICAZO's Alleged Waiver Was Voluntary, Knowing, and Intelligent.**

In order for inculpatory statements made by a defendant during custodial interrogation to be admissible in evidence, the defendant's "waiver of Miranda rights must be voluntary, knowing and intelligent." *United States v. Binder*, 769 F.2d 595, 599 (9th Cir. 1985) (citing *Miranda* 384 U.S. at 479). *See also Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). When interrogation continues in the absence of an attorney, and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel. *Miranda*, 384 U.S. at 475. To satisfy this burden, the prosecution must introduce evidence sufficient to establish "that under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986). *See also United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998) (holding that the test for reviewing a juvenile's waiver of rights is identical to that of an adult's and is based on the "totality of the circumstances" (citing *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

As the Ninth Circuit has reiterated, "[t]here is a presumption against waiver." *Garibay*, 143 F.3d at 536, (citing *United States v. Bernard S.*, 795 F.2d 749, 752 (9th Cir. 1986), in turn citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1966)). The standard of proof for a waiver of this constitutional right is high. *Miranda*, 384 U.S. at 475. *See United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great, the court must indulge every reasonable presumption against waiver of fundamental constitutional rights) (citing *Johnson v. Zerbst*, 304 US 458, 464 (1938). *Accord Garibay*, 143 F.3d at 537.

The validity of the waiver depends upon the particular facts and circumstances

surrounding the case, including the background, experience, and conduct of the accused. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). *See also United States v. Garibay*, 143 F.3d at 536; *United States v. Bernard S.*, 795 F.2d at 751 ("A valid waiver of Miranda rights depends upon the totality of the circumstances, including the background, experience and conduct of the accused."). In *Derrick v. Peterson*, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a *Miranda* waiver requires a two prong analysis: the waiver must be both (1) voluntary and (2) knowing and intelligent. *Id*. at 820. The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry [under] the [Fifth] Amendment . . . ." *Id*.

The second prong, however, requiring that the waiver be "knowing and intelligent," mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). *Accord Garibay*, 143 F.3d at 436. This inquiry requires that the court determine whether "the requisite level of comprehension" existed before the purported waiver may be upheld. *Id*. Thus, "[o]nly if the `totality of the circumstances surrounding the interrogation' reveal *both* an uncoerced choice *and* the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Derrick v. Peterson*, 924 F.2d at 820 (quoting *Moran v. Burbine*, 475 U.S. at 521) (emphasis in original) (citations omitted)).

The government must show that there was no duress or coercion, express or implied. The consent must be "unequivocal and specific" and "freely and intelligently given." There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony. "'Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights." Coercion is implicit in situations

where consent is obtained under color of the badge, and the government must show there was no coercion in fact. *United States v. Shaibu*, 920 F.2d 1423, 1426 (9th Cir. 1990) *citing United States v. Page*, 302 F.2d 81, 83-84 (9th Cir. 1962).

Furthermore, an inculpatory statement is voluntary only when it is the product of a rational intellect and a free will. *Blackburn v. Alabama*, 361 U.S. 199, 208, 80 S. Ct. 274, 4 L. Ed. 2d 242 (1960). The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne. *Haynes v. Washington*, 373 U.S. 503, 513-14, 10 L. Ed. 2d 513, 83 S. Ct. 1336 (1963); *United States v. Pinion*, 800 F.2d 976, 980 (9th Cir. 1986); *United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981).

Finally, a statement is involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Hutto v. Ross*, 429 U.S. 28, 30, 50 L. Ed. 2d 194, 97 S. Ct. 202 (1976) *quoting Bram v. United States*, 168 U.S. 532, 542-43, 42 L. Ed. 568, 18 S. Ct. 183 (1897). This broadly-stated rule has not been applied to invalidate, per se, all statements made by a suspect in response to a promise made by law enforcement personnel. The promise must be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances. *See Hutto v. Ross*, 429 U.S. at 30; *Miller v. Fenton*, 796 F.2d 598, 608 (3d Cir.), *cert. denied*, 479 U.S. 989, 107 S. Ct. 585, 93 L. Ed. 2d 587 (1986).

Unless and until *Miranda* warnings and a knowing and intelligent waiver are demonstrated by the prosecution, no evidence obtained as result of the interrogation can be used against the defendant. *Miranda*, 384 U.S. at 479. The government in the present case has the burden of proving that Ms. PICAZO was read her *Miranda* rights and intelligently and voluntarily waived those rights. *See United States v. Estrada-*

12

*Lucas*, 651 F.2d 1261, 1265 (9th Cir. 1980).

### C. Ms. PICAZO's Statements Were Involuntary.

Even when the procedural safeguards of *Miranda* have been satisfied, a defendant in a criminal case is deprived of due process of law if the conviction is founded upon an involuntary confession. *Arizona v. Fulminante*, 499 U.S. 279 (1991); *Jackson v. Denno*, 378 U.S. 368, 387 (1964). The government bears the burden of proving that a confession is voluntary by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 483 (1972).

In order to be voluntary, a statement must be the product of a rational intellect and free will. *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne in a particular case, the totality of the circumstances must be considered. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Some factors taken into account have included the youth of the accused, his lack of education, his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep. *Id.*

In determining the voluntariness of a confession, the Ninth Circuit has required consideration of "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *United States v. Bautista-Avila*, 6 F.3d 1360, 1364 (9th Cir. 1993). A statement is considered involuntary if it is "extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Hutto v. Ross*, 429 U.S. 28, 30 (1976) (*quoting Bram v. United States*, 168 U.S. 532, 542-43 (1897)). *See also United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981)(agent's express statement that defendant would not see her child

"for a while" and warning that she had "a lot at stake", referring specifically to her child, were patently coercive and defendant's resultant confession held involuntary).

### D.   This Court Should Conduct An Evidentiary Hearing.

This Court must conduct an evidentiary hearing to determine whether Ms. PICAZO' statements should be admitted into evidence.  Under 18 U.S.C. § 3501(a), this Court is required to determine, outside the presence of the jury, whether any statements made by Ms. PICAZO are voluntary. In addition, § 3501(b) requires this Court to consider various enumerated factors, including whether Ms. PICAZO understood the nature of the charges against him and whether he understood his rights. Without evidence, this Court cannot adequately consider these statutorily mandated factors.

Moreover, § 3501(a) requires this Court to make a factual determination. Where a factual determination is required, courts are obligated to make factual findings by Fed. R. Crim. P. 12. *See United States v. Prieto-Villa*, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "`suppression hearings are often as important as the trial itself,'" *id.* at 609-10 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.

### IX.   Any Evidence Obtained After an Illegal Detention Must be Suppressed.

The Fourth Amendment  prohibits "unreasonable" searches and seizures. U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968). The test of whether a seizure is reasonable entails a balancing of the governmental interest that justifies the intrusion against the individual's privacy expectations and interests. *See Ferguson v. City of Charleston*, 532 U.S. 67, 84 n.21 (2001); *see also Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 448-49 (1990).

The Fourth Amendment specifically prohibits unreasonable searches and

14

seizures of a vehicle during brief investigatory stops. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). Moreover, an officer may detain a motorist only upon a demonstration of "reasonable suspicion" of criminal activity. *See United States v. Cortez*, 449 U.S. 411, 417 (1981); *see also United States v. Rodriguez*, 976 F.2d 592, 594 (9th Cir. 1992), *amended* 997 F.2d 1306 (9th Cir. 1993). That "reasonable suspicion" must consist of "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Rodriguez*, 976 F.2d at 594 (citations omitted); *see also United States v. Sigmond-Ballesteros*, 285 F.3d 1117 (9th Cir. 2002).

A "gloss on this rule prohibits reasonable suspicion from being based on broad profiles which cast suspicion on entire categories of people without any individualized suspicion of the particular person to be stopped." *Sigmond-Ballesteros*, 285 F.3d at 1121 (quoting *United States v. Rodriguez-Sanchez*, 23 F.3d 1488, 1492 (9th Cir. 1994), (*overruled in part on other grounds*); *see also United States v. Montero-Camargo*, 208 F.3d 1122, 1131-32 (9th Cir. 2000); *United States v. Garcia-Camacho*, 53 F.3d 244, 245-46 (9th Cir. 1995); *United States v. Mariscal*, 285 F.3d 1127 (9th Cir. 2002).

A determination of whether an officer had "reasonable suspicion" of wrongdoing is "'not readily, or even usefully, reduced to a neat set of legal rules.'" *Ornelas v. United States*, 517 U.S. 690, 695-96 (1996) (*quoting Illinois v. Gates*, 462 U.S. 213, 232 (1983)); *see also United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir. 1989). Rather, in making reasonable-suspicion determinations, the court must consider the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting criminal activity. *United States v. Cortez*, 449 U.S. 411, 418 (1981); *see also United States v. Arvizu*, 534 U.S. 266, 266 (2002) (holding that the "totality of the circumstances" inquiry of an investigatory stop of a vehicle must be based on all factors, collectively, and not each in isolation). While this

15

inquiry "includes the 'collective knowledge of the officers involved, and the inferences reached by experienced, trained officers,'" *Hall*, 974 F.2d at 1204 (other internal quotations omitted), this experience may *not* be used to give the officers unbridled discretion in making a stop. *See Hernandez-Alvarado*, 891 F.2d at 1416; *see also Florida v. J.L.*, 529 U.S. 266, 271 (2000) (finding that a tip from an anonymous informant did not give rise to sufficient reasonable suspicion to perform a *Terry* stop).

The Ninth Circuit has held that the type of vehicle, alone, cannot give rise to "reasonable suspicion." *Rodriguez*, 976 F.2d at 596; *see also United States v. Sigmond Ballesteros*, 285 F.3d 1117,1124-25 (9th Cir. 2002); *see also United States v. Jimenez-Medina*, 173 F.3d 752, 755 (9th Cir. 1999). The type of vehicle holds little probative value as to "reasonable suspicion" in circumstances in which a particular type of vehicle can be employed for multiple uses--even if the officer claims that this type of vehicle has been used for smuggling in the past. *See Sigmond Ballesteros*, 285 F.3d at 1125. Under the totality of circumstances in this case, there were no specific facts that gave rise to a reasonable articulable suspicion to implicate the Navigator in any criminal activity. *See Hernandez-Alvarado*, 891 F.2d at 1416; *see also Sigmond-Ballesteros*, 285 F.3d at 1117.

Despite consistent rulings and repeated warnings by the Ninth Circuit, the government attempts to use "broad profiles" and general categories to find a reasonable suspicion for a *Terry* stop. In fact, the Ninth Circuit found no reasonable suspicion for *Terry* stops based upon many more alleged factors. For instance, in *Rodriguez*, the court held that the combined factors of the defendant's ethnicity, travel on a well-known alien smuggling route, failure to acknowledge the agents' marked car, control of a vehicle that appeared heavily loaded and that could be used for alien smuggling, and erratic driving upon being followed by the agents' vehicle were insufficient to support a finding of reasonable suspicion. *See* 976 F.2d at 594-96.

The description of innocent details, combined with the dislodged door latch, is inadequate to support a claim of reasonable suspicion of criminal activity. *See Garcia-Camacho*, 53 F.3d at 246 (holding that a set of factors does not amount to reasonable suspicion if "the profile tendered by the [government is] calculated to draw into the law enforcement net a generality of persons unmarked by any really articulable basis for reasonable suspicion." (citations omitted)); *see also Sigmond-Ballesteros*, 285 F.3d at 1121-26 (finding the factors that law enforcement relied upon, such as a vehicle changing lanes after a marked car began following it, the notoriety of the particular road for alien smuggling, the type of vehicle, time of day, proximity to the border, and a missing rear seat did *not* rise to reasonable suspicion).

In the absence of such corroborating factors, an experienced officer's reliance on a hunch is insufficient to provide a reasonable suspicion, even if the hunch turns out to be correct. *See Terry v. Ohio*, 392 U.S. at 27; *see also Jimenez-Medina*, 173 F.3d at 756. The requirement of objective facts to support a *Terry* stop prevents an inquiry into the subjective intuitions of police officers. *id.*

In this case, the information and activities on which the arresting agents relied to make the investigatory stop did not give rise to reasonable suspicion. The agent claimed to have a belief that there was smuggling activity going on involving Ms PICAZO which was really a hunch by the agents that Ms. PICAZO was involved.

Accordingly, this court should suppress all physical evidence acquired after the stop as fruits of an illegal stop in violation of the Fourth Amendment. *See Wong Sun v. United States*, 371 U.S. 471 (1963) (ruling that evidence obtained as a result of government impropriety must be excluded).If the initial detention is found to have been illegal then any evidence obtained must be suppressed. *See United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989). It is fundamental that the exclusionary rule extends beyond evidence directly obtained in violation of the Fourth

1  Amendment to the "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S.
2  338; 60 S. Ct. 266, 341; 84 L. Ed. 307, (1939); *United States v. Johns*, 891 F.2d 243,
3  245 (9th Cir. 1989).

**VII.   FURTHER MOTIONS**

It is likely there is additional discovery to be produced by the government which will likely lead to the necessity for additional motions.

## CONCLUSION

Defendant respectfully requests that the above-enumerated motions be granted for the reasons stated.

DATE: June 16, 2008                /s/ Michael L. Crowley
                                   Michael L. Crowley, Esq.
                                   Attorney for Defendant #1
                                   ESMERELDA PICAZO

C:\WP\CRIM\FEDERAL\Picazo, Esmerelda - 1st P & A.wpd

18